HORACE S. JOHNSTON
vs.
THE DISTRICT OF COLUMBIA and THE FIRST NATIONAL BANK OF
NEW YORK.

EQUITY, No. 7809.

{ Decided December 10, 1883.
{ The CHIEF JUSTICE and Justices Cox and JAMES sitting.

It was entirely within the discretion of the Board of Public Works to deter-
mine upon the width of pavements to be laid under the acts authorizing
special improvements and assessments therefor.

THE CASE is stated in the opinion.

JOHN E. NORRIS and ROBERT CHRISTY for plaintiff.

RIDDLE & MILLER for defendant.

Mr. Justice JAMES delivered the opinion of the court,

The plaintiff, Johnston, is the owner of certain lots in
this city, on Twenty-sixth street, between Pennsylvania av-
enue and M street, lying in such a way that they abut, not
only on Twenty-sixth street, but on Pennsylvania avenue
and on M street.

In August, 1877, contracts were made between the Board
of Public Works and the Manhattan Paving Co. of New
York, whereby the latter was to put down on Twenty-sixth
street, and on M street, in front of these lots, a carriageway,
and a curbing and pavement, or footway. On Twenty-sixth
street there is a high bank of rock, which, curving out-
wardly towards the center of the street, embraces two or
three of these lots facing on Twenty-sixth street.

A pavement and footway were laid, and assessments were
made for the work, and thereafter certificates of indebted-
ness for unpaid assessments were issued against the lots.
It appears that these certificates were purchased by the de-
fendant, The First National Bank of New York, who, it is
alleged, is attempting to enforce their collection by adver-
tisement and sale of the property. The plaintiff prays that
the bank be enjoined from this, because, as is alleged in the
bill, the pavement on Twenty-sixth street and on M street

being of the ordinary width of eleven or twelve feet, including six inches for curbing, narrowed down to four or five or possibly six feet, in front of this rampart of rocks, and he asserts that until it should be made eleven feet wide (which would involve the cutting away at great expense of this pile of rock), it is an unfinished work, and that no assessment can lawfully be made until it shall be so done.

This claim is based upon the provisions of the act of the legislative assembly, approved August 10, 1871, which provides, "that whenever any of the improvements mentioned or referred to in section thirty-seven of the act entitled 'An act to provide a government for the District of Columbia,' approved the twenty-first day of February, one thousand eight hundred and seventy-one, *shall be completed,* a statement of the cost thereof shall be prepared by the Board of Public Works, and shall be filed in the office thereof, and immediately thereafter an assessment, based upon said statement, shall be made, as provided for in said section of said act, which assessment shall be collected by the said board in the same manner as other taxes of the District of Columbia are now or may hereafter be authorized to be collected."

By the 3d section of this act it is also provided, "that if any person or persons, notified as aforesaid, shall neglect or refuse to pay the amount assessed against his or her property, as aforesaid, after the expiration of thirty days, the said Board of Public Works shall immediately thereafter issue certificates of indebtedness against the property assessed as aforesaid, which certificate shall bear interest, until paid, at the rate of ten per centum per annum, and until paid, the assessment and certificate shall remain and be a lien upon the property on or against which they shall have been issued; and if the said assessment shall not be paid within one year, the said board shall, upon the application of the holder of the certificate of indebtedness, proceed to sell the property against which the assessment and the certificate exist, or so much thereof as may be necessary to pay said assessment."

It appears in the bill itself, and by the testimony, that

13

after the assessments were made, an officer in charge of the duty of correcting excessive assessments, made reductions in the assessment where the pavement was narrowed; that is to say, although there was an original charge as for a pavement of the ordinary width, the charge was reduced on account of the narrowness necessitated by the existence of this bank of rock. The contract between the Board of Public Works and the paving company, it should be stated, did not specify what was to be the width of the pavement or footway. But the acceptance, without objection, by the board of this pavement, so narrowed, must be taken as virtually conceding to the company that the pavement was to be of this reduced width at that point. The assessment, as corrected, against these lots, was made for their proportion of the cost of this narrowed pavement, and not for a pavement eleven or twelve feet wide. We are of opinion that it was entirely within the discretion of the Board of Public Works to make the pavement of full or narrow width, as it might determine. It is not for us to say how wide it ought to have been, since it has not been shown to us that the law required it to be of any specified width. And knowing the laws of the legislative assembly, we are of opinion that they do not require anything of the sort; the matter was left wholly to the discretion of the Board of Public Works, and if the latter accepted, without objection, this pavement from the paving company in its narrowed state, and assessed the lot owners with that fact in view, we must presume that it was because it had been decided that the pavement should be of this reduced width.

There is no ground for complaint, therefore, even if it had happened that the bank held certificates of indebtedness issued against the lots lying at this narrow point, and were threatening to enforce the collection of them. But it seems, as a matter of fact, that the particular certificates held by The First National Bank are against lots where the pavement is of the full width. So that the payment which is insisted upon is not for an unfinished piece of work.

But whether that be so or not, the principle on which we

rest our decision is, that it was a matter for the Board of Public Works to determine whether a wide pavement or a narrow one was to be laid; that, as a matter of fact, they determined upon a narrow pavement at this point, and that the assessment was consequently for work actually completed.

The bill was dismissed below, and we affirm the decree.